UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Respondent, | ) |
| | ) |
| v. | ) Case No. 2:14-cr-20026-SLD |
| | ) |
| EDWARD DORSEY, SR., | ) |
| | ) |
| Defendant-Petitioner. | ) |

ORDER

Before the Court are Defendant-Petitioner Edward Dorsey, Sr.'s *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Pro Se 2255 Motion"), ECF No. 42, counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 ("Counseled 2255 Motion"), ECF No. 44, *pro se* motion for contempt, ECF No. 47, and counseled motion for a status conference, ECF No. 50. For the reasons that follow, the 2255 motions are DENIED, the motion for contempt is STRICKEN, and the motion for a status conference is MOOT.

BACKGROUND

I.     **Indictment and Plea**

In May 2014, a grand jury indicted Dorsey on two counts of distribution of 28 grams or more of a mixture and substance containing crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) and one count of distributing a mixture and substance containing crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Indictment 1–2, ECF No. 1. Assistant Federal Public Defender Elisabeth Pollock was appointed to represent Dorsey. May 14, 2014 Min. Entry.

On August 14, 2014, the Government filed a notice indicating that it intended to rely on Dorsey's prior convictions to subject him to increased statutory penalties. Information Concerning Prior Convictions 1–2, ECF No. 7. On August 22, 2014, Dorsey entered a plea of guilty to the charges against him without a plea agreement. Aug. 22, 2014 Min. Entry. The plea was accepted by United States District Judge Colin Bruce, who was then presiding over the case, on September 9, 2014. Order Approving Magistrate Judge Recommendation, ECF No. 12.

## II.    Sentencing

The United States Probation Office ("USPO") prepared a presentence investigation report ("PSR") in advance of sentencing. PSR, ECF No. 14. USPO indicated that Dorsey was a career offender, *id.* ¶ 36, and listed his total offense level as 34 after acceptance of responsibility, *id.* ¶¶ 37–39. With a criminal history category of VI, *id.* ¶ 52, his Sentencing Guidelines range for imprisonment was 262 to 327 months, *id.* ¶ 99.[1] He was subject to a ten-year mandatory minimum sentence on two of his counts and a thirty-year statutory maximum sentence on the remaining count. *Id.* ¶ 98.

The Government requested a sentence of 300 months of imprisonment. Sentencing Hr'g Tr. 15:13–14, ECF No. 24. Dorsey requested a below-Guidelines sentence. *Id.* at 22:5–6. On December 15, 2014, Judge Bruce sentenced Dorsey to 276 months of imprisonment and eight years total of supervised release. *Id.* at 28:22–29:7. Judgment was entered December 18, 2014. Judgment 1, ECF No. 17.

---

[1] Dorsey made one objection to the PSR; he denied that he carried a firearm during his offense conduct and denied that he threatened to shoot police officers. PSR 24. He acknowledged, however, that resolving the objection would not affect his Guidelines range because of the career offender enhancement. *Id.* At the sentencing hearing, Dorsey withdrew the objection though he still disputed the facts. Sentencing Hr'g Tr. 3:10–18, ECF No. 24.

### III. Appeal

Dorsey filed a timely appeal the same day judgment was entered. Not. Appeal, ECF No. 20. The parties moved for summary reversal, however, on the basis that the language used in imposing some of the conditions of supervised release was overbroad and vague; the Seventh Circuit granted this motion and remanded for resentencing. Mandate 3–4, ECF No. 26.

### IV. Resentencing

On remand, Dorsey requested a lower term of imprisonment (180 months) along with a longer term of supervised release (sixteen years). Resentencing Mem. 4, ECF No. 28. The Government requested a sentence of more than 276 months of imprisonment due to changed circumstances. *See* Resp. Resentencing Mem. 13–17, ECF No. 29 (arguing, for example, that a longer term of imprisonment was warranted because certain supervised release conditions—such as a condition that Dorsey shall permit a probation officer to visit him at home or elsewhere at any time—were no longer available and because another judge sentenced Dorsey to a concurrent term of imprisonment for a supervised release revocation rather than a consecutive sentence).

Judge Bruce held a resentencing hearing on October 16, 2015. Oct. 16, 2015 Min. Entry. Judge Bruce noted that "when [he] imposed the original sentence . . . [his] belief was a term of 327 months was the appropriate term." Resentencing Hr'g Tr. 34:8–12, ECF No. 37. He imposed a sentence of 276 months on the belief that an anticipated 51-month term of imprisonment for a supervised release revocation from a prior federal case would be imposed consecutive to the sentence in the instant case. *See, e.g., id.* at 35:15–25. It was, however, imposed concurrently. *See, e.g., id.* at 14:13–14. Judge Bruce "view[ed] th[e resentencing] as an opportunity to . . . correct . . . in a way, a misunderstanding on [his] part that the 51 months was definitely going to be consecutive." *Id.* at 36:13–16. Accordingly, he sentenced Dorsey to 327

3

months of imprisonment and eight years total of supervised release. *Id.* at 37:8–17. An amended judgment was entered on October 20, 2015. Am. Judgment 1, ECF No. 31.

V. **Second Appeal**

Dorsey filed a timely notice of appeal. *See* Not. Appeal, ECF No. 34. He raised two claims on appeal: first, that Judge Bruce "should have been disqualified based on his previous employment" with the USAO which prosecuted Dorsey's first federal case; and second, that "his sentence was procedurally unsound because at resentencing," Judge Bruce "impermissibly considered his revocation sentence." *United States v. Dorsey*, 829 F.3d 831, 835 (7th Cir. 2016). Dorsey's first claim was based on 28 U.S.C. § 455(b)(3), which provides that a judge must disqualify himself "[w]here he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." The Seventh Circuit held that Judge Bruce need not have recused himself under § 455(b)(3) because "it was impossible for Judge Bruce to" act a prosecutor in the current proceeding as it was initiated after he became a judge. *Dorsey*, 821 F.3d at 836. The Seventh Circuit also found meritless Dorsey's claim that Judge Bruce could not consider another judge's decision in a separate case in determining the appropriate sentence in this case. *Id.* at 837. It noted that the Supreme Court had specifically held that resentencing courts may consider postsentencing information. *Id.* (citing *Pepper v. United States*, 562 U.S. 476, 487–505 (2011)). And it held that Judge Bruce's reasoning—that his original sentence was based on the expectation that the revocation sentence would be imposed consecutively—"more than adequately justifie[d] Dorsey's final sentence." *Id.*

4

### VI.  2255 Proceedings

In April 2020, Dorsey filed the Pro Se 2255 Motion, raising four claims. *See* Pro Se 2255 Mot. 14.[2] First, he argued that his due process rights were violated during his guilty plea and sentencing because Judge Bruce was biased against him. *Id.* at 4–5. Second, he argued that Judge Bruce failed to recuse himself under 28 U.S.C. § 455(a). *Id.* at 6. These claims are based on *ex parte* communications between Judge Bruce and the United States Attorney's Office for the Central District of Illinois ("USAO") that came to light in 2018. *See United States v. Atwood*, 941 F.3d 883, 884–85 (7th Cir. 2019) (providing a brief explanation of the discovery and disclosure of the communications). Third, Dorsey argued that his Sixth Amendment right to effective assistance of counsel was violated because his attorney failed to object to his career offender enhancement. Pro Se 2255 Mot. 9. And lastly, Dorsey argued that his Sixth Amendment right to effective assistance of counsel was violated by Federal Public Defender Thomas Patton because Patton failed to preserve Dorsey's rights to bring claims under § 2255 based on Judge Bruce's communications. *Id.* at 10; Exhibits 1–2, ECF No. 42-1 at 1–2.

Judge Bruce recused himself from hearing Dorsey's motion, and the case was reassigned to this Court. April 16, 2020 Text Order of Recusal. The Court appointed counsel to represent Dorsey with respect to the Pro Se 2255 Motion. Apr. 17, 2020 Text Order. On September 29, 2020, counsel filed the Counseled 2255 Motion, "which is intended to supplement" the Pro Se 2255 Motion. Counseled 2255 Mot. 1 ("[Dorsey] does not withdraw any claims from his *pro se* filing."). The Counseled 2255 Motion reasserts the due process and § 455(a) claims as well as the ineffective assistance of counsel claim related to preservation of issues for § 2255 review. *Id.* at 2, 13, 24–25. It adds a claim that the Federal Public Defender's office ("FPD") was

---

[2] The Court uses the page numbers generated by CM/ECF because the Pro Se 2255 Motion is not consistently paginated.

5

ineffective for failing to raise claims based on Judge Bruce's communications in Dorsey's appeal. *Id.* at 24.

The Government filed its response on July 13, 2021. Resp., ECF No. 49. It argues that Dorsey cannot show actual bias or ineffective assistance of counsel and that the § 455(a) claim is untimely, not cognizable, and does not warrant resentencing. *Id.* at 1.

No reply was filed, though Dorsey later filed a motion for a status conference.

## DISCUSSION

### I.  Legal Standard

A prisoner in federal custody may move the court that imposed his sentence to vacate, set aside, or correct it. 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

### II.  Analysis

The Court addresses each of Dorsey's claims separately along with any defenses specific to those claims.

#### A. Due Process Claim

The due process claim is based on *ex parte* communications between Judge Bruce and the USAO that became public in August 2018, almost three years after Dorsey was sentenced.

6

These communications have been detailed and summarized elsewhere. *See Shannon v. United States*, 39 F.4th 868, 876, 883 (7th Cir. 2022) (citing *In re Complaints Against District Judge Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council May 14, 2019), http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-90067.pdf). Dorsey argues that these communications demonstrate that Judge Bruce was actually biased against him, violating his due process rights. *See* Counseled 2255 Mot. 13.

"Due process requires 'a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case.'" *Shannon*, 39 F.4th at 883 (quoting *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997)). A due process claim can be proved by evidence of the judge's actual bias or by showing that "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Id.* (quoting *Rippo v. Baker*, 580 U.S. 285, 287 (2017)).

The Seventh Circuit has decided a few cases involving due process bias claims based on Judge Bruce's *ex parte* communications which are instructive here. In *United States v. Williams*, 949 F.3d 1056, 1061–63 (7th Cir. 2020), the court held that Judge Bruce presiding over a defendant's trial did not violate the defendant's due process rights where the defendant relied primarily on the *ex parte* communications but the communications did not concern the defendant's case. It noted that the Special Committee appointed by the Judicial Council of the Seventh Circuit to review complaints against Judge Bruce related to the communications "found no evidence and received no allegation that Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party." *Id.* at 1061–62 (quotation marks omitted). Moreover, the court noted that though the communications exposed a preexisting relationship with members of the USAO, such a relationship "alone does not create a due process

7

violation." *Id.* at 1062. It found that the defendant had "presented no evidence to rebut th[e] presumption" that "judges rise above . . . potential biasing influences." *Id.* (quotation marks omitted). Dorsey relies on the same communications that were relied on in *Williams* and considered by the Special Committee, and he points to no emails that concern his case specifically or any evidence showing that the communications impacted his case. *See* Counseled 2255 Mot. 5–16.[3]

In *Shannon*, the Seventh Circuit found that Judge Bruce's participation in a defendant's sentencing hearing, as opposed to only his trial, may warrant a different result under the due process clause because judges have considerable discretion at sentencing. *Shannon*, 39 F.4th at 884–86. In that case, Judge Bruce made comments at sentencing that the court concluded could have been interpreted as a warning that if the defendant appealed, he would impose a harsher sentence. *Id.* at 886–87. Though it ultimately declined to rule on whether there was a due process violation, the Seventh Circuit appeared to be troubled by the combination of the *ex parte* communications and the comments. *See id.* at 884 (declining to resolve the constitutional issue and instead remanding for resentencing under the court's supervisory authority). Dorsey points to no similar comment at sentencing that would lend itself to a finding that Judge Bruce was biased against him. Instead, he is relying on the *ex parte* communications alone. *See* Counseled 2255 Mot. 14–15.[4] The Court thus finds that Dorsey has failed to show either actual bias or a risk of bias so high that it violates due process. The due process claim is denied.

---

[3] The Government points out that there is an *ex parte* email chain about Dorsey's case. *See* Resp. 4–5. This email was attached to the Pro Se 2255 Motion. *See* Exhibits 6–16, ECF No. 42-1 at 6–16. But it merely involves a paralegal from the USAO asking for a hearing in Dorsey's case to be rescheduled and Judge Bruce advising her to file a motion to continue. *Id.* Nothing about this email chain suggests any bias against Dorsey.

[4] Though Judge Bruce in fact increased Dorsey's sentence on appeal, Dorsey does not argue that this shows bias; instead, he merely points to this as an example of Judge Bruce exercising discretion. *See* Counseled 2255 Mot. 4. In any case, the Seventh Circuit already held that the misunderstanding about the revocation sentence being imposed consecutively sufficiently explained the increased sentence on remand. *See Dorsey*, 821 F.3d at 837.

B. Section 455(a)

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Dorsey argues in the alternative to his due process claim that the *ex parte* communications demonstrate an appearance of bias that required Judge Bruce to recuse himself under 28 U.S.C. § 455(a). *See* Counseled 2255 Mot. 13. The Government does not explicitly address whether Judge Bruce's impartiality might reasonably have been questioned and, thus, whether he should have recused himself from Dorsey's case under § 455(a).[5] Instead, it argues that this statutory claim is untimely and not cognizable on § 2255 review. Resp. 8–16. The Court addresses each of these arguments.

1. Timeliness

Pursuant to the Antiterrorism and Effective Death Penalty Act, a federal prisoner seeking to vacate his sentence under § 2255 has one year to do so, from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

---

[5] To the Court's knowledge, the Government has conceded an appearance of impropriety—and thus a violation of § 455(a)—in every case involving Judge Bruce's communications that has been decided by the Seventh Circuit so far. *See, e.g.*, *Atwood*, 941 F.3d at 885; *Williams*, 949 F.3d at 1063; *United States v. Orr*, 969 F.3d 732, 738 (7th Cir. 2020).

Dorsey acknowledges that his Pro Se 2255 Motion was filed outside the one-year statute of limitations provided by 28 U.S.C. § 2255(f)(1) but argues that he is entitled to equitable tolling of the statute of limitations because Federal Public Defender Thomas Patton made a legal error and failed to preserve his right to raise a claim based on Judge Bruce's failure to recuse from his case. Counseled 2255 Mot. 3–4.[6] The Government responds that Dorsey is not entitled to equitable tolling because the attorney misconduct he alleges is not extraordinary and because he did not take "any actions to diligently pursue his rights." Resp. 10–12.

The time limits set forth in § 2255(f) are subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (holding that the statute of limitations for § 2254 motions are subject to equitable tolling); *Lombardo v. United States*, 860 F.3d 547, 551–52 (7th Cir. 2017) (applying the equitable tolling doctrine to a motion under § 2255). A petitioner is entitled to equitable tolling if he can show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (quotation marks omitted). "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *United States v. Marcello*, 212 F.3d 1005, 1010

---

[6] The Court cannot ascertain whether Dorsey contends his motion is timely under § 2255(f)(2), (3), or (4). He states that there are "a few exceptions to the on[e]-year period of limitations in cases where there was an impediment from making a motion," citing to § 2255(f)(2), (3), and (4). Counseled 2255 Mot. 3. But he makes no argument that any of these provisions apply. Instead, he goes on to argue for equitable tolling, *id.* at 3–4, which is a common law doctrine distinct from the statutory provisions, *cf. Estremera v. United States*, 724 F.3d 773, 777 (7th Cir. 2013) (distinguishing between common law equitable tolling and § 2255(f)(2)). In any case, the Court finds that Dorsey's motion is not timely under § 2255(f)(2), (3), or (4). Because Dorsey does not allege that any government action created an impediment to filing a § 2255 motion, § 2255(f)(2) does not apply. And because he does not rely on a new right recognized by the Supreme Court, § 2255(f)(3) does not apply. The Government argues that even if § 2255(f)(4) applies, the Pro Se 2255 Motion was filed outside the statute of limitations because it was filed more than a year after Dorsey could have learned of Judge Bruce's improper communications. Resp. 9. The Court agrees, though it declines to find on the record before it that Dorsey should have been aware of the communications in August 2018 when they became public, as the Government argues, *see id.* The Government provided a letter from Pollock to Dorsey dated November 13, 2018 informing him of Judge Bruce's communications. *See* Nov. 13, 2018 Letter, Resp. Ex. A, ECF No. 49-1 at 3–4. At the latest, Dorsey would have been aware of the communications in late 2018 when he received this letter, but he did not file his Pro Se 2255 Motion until April 2020, more than a year later.

10

(7th Cir. 2000). "A petitioner bears the burden of establishing both elements of the *Holland* test; failure to show either element will disqualify him from eligibility for tolling." *Mayberry v. Dittmann*, 904 F.3d 525, 529–30 (7th Cir. 2018).

Here, Dorsey barely develops an argument that he has met both elements of the *Holland* test. He cites *Holland* for the proposition that "[a]n attorney's unprofessional conduct can be so egregious as to create an extraordinary circumstance warranting equitable tolling" but then merely states that Patton told him he made a legal error and failed to preserve his right to bring a claim based on Judge Bruce's failure to recuse. *See* Counseled 2255 Mot. 3–4 (quotation marks omitted). Dorsey does not acknowledge that in *Holland*, the Supreme Court held that "a garden variety claim of excusable neglect . . . does not warrant equitable tolling," *Holland*, 560 U.S. at 651–52 (quotation marks and citations omitted), or that the facts of *Holland* are quite distinguishable from the facts of his case. In *Holland*, the Supreme Court found that the attorney's conduct "may well" have warranted equitable tolling because the facts showed that it went beyond simple negligence: the attorney did not file the petitioner's § 2254 petition on time despite the petitioner sending "many letters that repeatedly emphasized the importance of his doing so"; he did not research the applicable filing date; he did not inform the petitioner that the Florida Supreme Court had decided his case despite the petitioner's "many pleas for that information"; and the attorney "failed to communicate with his client over a period of years, despite various pleas from [the petitioner] that [the attorney] respond to his letters." *Id.* at 652. The Court remanded for further consideration because "no lower court ha[d] yet considered in detail the facts of th[e] case to determine whether they indeed constitute extraordinary circumstances sufficient to warrant equitable relief." *Id.* at 653–54. Dorsey points to no facts— and cites no further cases—to support his argument that Patton's legal mistake would go beyond

11

mere negligence and support a finding of extraordinary circumstances warranting equitable tolling. *See Ademiju v. United States*, 999 F.3d 474, 477 (7th Cir. 2021) ("[I]ncorrect legal advice generally does not by itself trigger equitable tolling."). Moreover, Dorsey merely states in a conclusory fashion that he "diligently filed his *pro se* filing upon learning of the mistake." Counseled 2255 Mot. 4. But "mere conclusory allegations of diligence are insufficient." *Mayberry*, 904 F.3d at 531.

The Court concludes that Dorsey has failed to establish his entitlement to equitable tolling, so it finds his § 455(a) claim untimely.

### 2. Cognizability

Even if Dorsey's § 455(a) claim were not untimely, it would not warrant relief. Section 2255 "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States*, 417 U.S. 333, 343 (1974). Although the language of § 2255 suggests that a prisoner can obtain relief if his sentence was imposed in violation of the "laws of the United States," § 2225(a), not "every asserted error of [nonconstitutional] law can be raised on a § 2255 motion." *Davis*, 417 U.S. at 346. The "appropriate inquiry [i]s whether the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and whether it presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Id.* (quotation marks and alterations omitted); *see also Reed v. Farley*, 512 U.S. 339, 348 (1994) (noting the standard as whether the federal law violation qualifies as "a fundamental defect which inherently results in a complete miscarriage of

justice [or] an omission inconsistent with the rudimentary demands of fair procedure" (alteration in original) (quotation marks omitted)).[7]

Two circuit courts have addressed whether a § 455(a) claim is cognizable on a § 2255 motion.[8] In *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990), the Fifth Circuit found the relevant inquiry to be "whether there was an appearance of impropriety which rose to the level of a fundamental defect resulting in a complete miscarriage of justice." *Id.* (quotation marks omitted). It held that "[a]bsent that level of severity, the claim of an appearance of impropriety is not cognizable under 28 U.S.C. § 2255." *Id.* It noted that "section 455 and the Due Process Clause are not coterminous" and that "conduct violative of section 455 may not constitute a due process deficiency." *Id.* And it appeared to hold that a § 455(a) claim is only cognizable where the § 455(a) violation falls "within [a] protected constitutional dimension" where § 455 and the Due Process Clause overlap. *Id.* at 82, 83.[9]

In *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989), the Second Circuit assumed without deciding "that as a general matter collateral attack upon a criminal sentence may be available under section 2255 to pursue a claim of appearance of impartiality." It made this

---

[7] Although *Reed* involved a motion under 28 U.S.C. § 2254, *Reed*, 512 U.S. at 347, the Supreme Court held that the same standard that applies to determining whether a nonconstitutional federal law violation is cognizable on § 2255 review applies to § 2254 cases, *id.* at 353–54.

[8] In an unpublished opinion, the Tenth Circuit addressed a § 455 bias claim on § 2255 review because the petitioner "assert[ed] that he was unaware of the facts allegedly warranting recusal when direct review was available." *United States v. Austin*, 48 F.3d 1233, at *1 & n.2 (10th Cir. 1995) (table opinion) (citing *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989)). But as this case is unpublished and does not analyze this issue specifically, it is not persuasive, and the Court will not address it here.

[9] The Fifth Circuit's precise holding as it relates to the facts of the case is not clear. The district judge considering the defendant's § 2255 motion had resentenced the defendant "to comply with the spirit and beyond of *Liljeberg* [*v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)]." *Couch*, 896 F.2d at 80 (quotation marks omitted). The Fifth Circuit found that the alleged § 455(a) violation did not fall within protected constitutional dimensions warranting § 2255 relief. *Id.* at 82, 83 ("We conclude and hold that Couch's claims of an appearance of impropriety do not rise to the level of a fundamental defect in due process cognizable under 28 U.S.C. § 2255."). It noted that by resentencing the defendant, the district judge had accorded him "a measure of process well beyond that due on the facts of his case," but that it was "within [the judge's] power to do so." *Id.* at 82. The Fifth Circuit does not make explicit what gave the judge the power to resentence the defendant but seemed to hold that it was not required or warranted under § 2255.

assumption based on the Supreme Court's decision in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988). *Liljeberg* involved a motion under Federal Rule of Civil Procedure 60(b)(6) to vacate a civil judgment on the basis that the judge should have recused himself under § 455(a). *Liljeberg*, 486 U.S. at 858, 863. Rule 60(b)(6) allows district courts to grant relief from a final civil judgment in "extraordinary circumstances." *Id.* at 863–64 (quotation marks omitted). The Supreme Court held that

> in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process.

*Id.* at 864. The Second Circuit in *Hardy* noted initially that it "doubt[ed] that an *appearance* of impropriety under section 455(a), without more, [would] constitute[] the type of 'fundamental defect' that would justify vacating an otherwise lawful sentence under section 2255." *Hardy*, 878 F.2d at 97. It reasoned that, after *Liljeberg*, it was "not certain" whether the Court would similarly hold that a criminal judgment may be collaterally attacked based on an appearance of impropriety but concluded that "the analogy [wa]s sufficiently close to warrant" the assumption that it would "for purposes of [that] appeal." *Id.* The only dispositive holding from the Second Circuit in *Hardy*, however, was that the defendant could not obtain relief under section 2255 because she was aware of the basis for the judge's recusal when direct appeal was available. *Id.* at 98.

Like in *Couch*, the Court finds that a § 455(a) claim could be cognizable on § 2255 review, but only if it meets the standard laid out in *Davis*. Under that standard, the alleged § 455(a) error must be "a fundamental defect which inherently results in a complete miscarriage of justice" and "present[] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Davis*, 417 U.S. at 346 (quotation marks omitted). Here,

the alleged error does not rise to that level. As noted above, Dorsey has not established a due process violation and has no evidence that any of Judge Bruce's communications or relationships with the USAO impacted his proceedings or prejudiced him. *Cf. Bachner v. United States*, 517 F.2d 589, 597 (7th Cir. 1975) ("The remote and theoretical possibility that a complete miscarriage of justice might have occurred is not enough to satisfy the Davis test, when in fact no injustice has been done."); *Reed*, 512 U.S. at 350–52 (finding a state court's failure to comply with the Interstate Agreement on Detainers was not cognizable on § 2254 review where the defendant did not object and no prejudice resulted because the case "lack[ed] aggravating circumstances rendering the need for the remedy afforded by the writ of *habeas corpus* . . . apparent" (second alteration in original) (quotation marks omitted))). And any violation of § 455(a) would have no bearing on Dorsey's guilt or innocence. *See Hussong v. Warden*, 623 F.2d 1185, 1185, 1191 (7th Cir. 1980) (finding that a § 2254 "petitioner's incarceration in violation of section 2515 of the federal wiretap statute d[id] not meet the required 'complete miscarriage of justice' standard required of nonconstitutional violations of federal law in order to be cognizable under the federal habeas corpus statute," noting in part that "the issues he ask[ed] [the court] to redetermine h[ad] no bearing on the basic justice of his incarceration" and that nothing in the record indicated he was not guilty (quotation marks omitted)). Moreover, even Dorsey's second sentence was within his Guidelines range for imprisonment.

The Court does not find that *Liljeberg* requires a different result. *Liljeberg* identified three factors for determining whether a civil judgment should be vacated under Rule 60(b)(6) due to extraordinary circumstances. *See Liljeberg*, 486 U.S. at 858. And in *Atwood*, the Seventh Circuit used those factors to determine whether a statutory recusal error was harmless on appeal. *Atwood*, 941 F.3d at 885. The *Davis* standard for nonconstitutional errors requires more than a

showing of extraordinary circumstances or that a statutory error was not harmless. It is a "well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Even if the Court found that the error was not harmless under those factors, that would not suffice to meet the *Davis* standard. *See* Brian R. Means, Federal Habeas Manual § 1:38 (May 2022 Update) (noting that the *Davis* "standard is more onerous . . . than the harmless error test applied to non-constitutional claims raised on direct appeal"); *United States v. Addonizio*, 442 U.S. 178, 184 (1979) ("It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."). "There is a difference between reversing an error on appeal and correcting the error years later." *Hawkins v. United States*, 706 F.3d 820, 824 (7th Cir. 2013).

Dorsey has not shown that any violation of § 455(a) was a fundamental defect resulting in a complete miscarriage of justice. His § 455(a) claim, therefore, does not warrant relief under § 2255.

C. **Ineffective Assistance of Counsel Claims**

In his Counseled 2255 Motion, Dorsey asserts that the FPD "provided him ineffective assistance of counsel" in violation of the Sixth Amendment in two ways. *See* Counseled 2255 Mot. 24–25. First, he argues that the FPD "was ineffective for failing to include claims [based on Judge Bruce's *ex parte* communications] in direct appeals once the full scope of the . . . communications was revealed." *Id.* at 25. And second, he argues that the FPD was ineffective for failing to include him in a tolling agreement for actual bias claims and for failing to secure an agreement for appearance of bias claims. *Id.* In his Pro Se 2255 Motion, Dorsey also claims that

16

his counsel was ineffective for failing to object to his career offender enhancement.  Pro Se 2255 Mot. 9.

With respect to the appeal claim, the Government points out that "Dorsey's appellate rights were extinguished before any e-mails had been revealed . . . let alone by the time 'the full scope' of Judge Bruce's e-mails were revealed." Resp. 25.  The Court finds this persuasive—Dorsey's right to appeal expired in late 2015, long before Judge Bruce's *ex parte* communications came to light.  Dorsey's counsel could not have performed deficiently by failing to raise an argument based on facts of which she was unaware.

The Government makes a number of arguments against the tolling agreement claim, *id.* at 25–29, but the Court has identified a more fundamental problem with it.  Dorsey had no right to counsel beyond his direct appeal.  *See Coleman v. Thompson*, 501 U.S. 722, 756 (1991) ("[A] criminal defendant has no right to counsel beyond his first appeal . . . ."); *cf. Garza v. Idaho*, 139 S. Ct. 738, 749 (2019) ("There is no right to counsel in postconviction proceedings . . . ." (citation omitted)).  Thus, any deficient performance with respect to securing postconviction tolling agreements does not create a Sixth Amendment violation.

The Government does not address Dorsey's *pro se* claim related to the career offender enhancement.  Nevertheless, the Court finds it meritless.  Dorsey argues his counsel should have objected to the enhancement because his Illinois cocaine charge was not a proper offense for the career offender enhancement.  Pro Se 2255 Mot. 9.  His argument is that the Illinois definition of cocaine is broader than the federal definition of cocaine.  *See* Mem. Supp. 13–17, ECF No. 42-3.  But this argument was rejected by the Seventh Circuit in *United States v. Ruth*, 966 F.3d 642, 654 (7th Cir. 2020).  The Seventh Circuit explained that "[t]he career offender guideline defines the term controlled substance offense broadly, and the definition is most plainly read to include

state-law offenses related to controlled or counterfeit substances punishable by imprisonment for a term exceeding one year." *Id.* (quotation marks omitted). In *Ruth*, the Seventh Circuit specifically found that an Illinois cocaine conviction was "a controlled substance offense according to the career-offender guidelines." *Id.* Thus, this argument would have failed, and counsel was not ineffective for failing to make it.[10]

### III. Certificate of Appealability

When a district court enters a final order adverse to an applicant, it must issue or deny a certificate of appealability. Rule 11(a), Rules Governing § 2255 Proceedings. A court can grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Dorsey has failed to make a substantial showing of the denial of a constitutional right, so the Court declines to issue a certificate of appealability.

### CONCLUSION

Accordingly, Defendant-Petitioner Edward Dorsey, Sr.'s *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 42, and counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 44, are DENIED. His *pro se* motion for contempt, ECF No. 47, is STRICKEN as it was filed when Dorsey had counsel. Dorsey's counseled motion for a status conference, ECF No. 50, is MOOT in light of this Order. The Clerk is directed to enter judgment and close the accompanying civil case, 2:20-cv-02096-SLD.

---

[10] Moreover, for the career offender enhancement to have applied, Dorsey needed only two prior felony convictions for either a crime of violence or controlled substance offense. *See* U.S. Sent'g Guidelines Manual § 4B1.1(a)(3) (U.S. Sent'g Comm'n 2014). Dorsey had a prior federal crack cocaine offense and an Illinois conviction for criminal fortification of a residence. *See* PSR ¶¶ 36, 44, 48. He does not challenge these as qualifying predicate convictions for the career offender enhancement.

18

Entered this 15th day of May, 2023.

                                                          s/ Sara Darrow
                                                          SARA DARROW
                          CHIEF UNITED STATES DISTRICT JUDGE